Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000027
30-JUN-2015
08:28 AM

NO. CAAP-12-0000027

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
CLARENCE L. MONTALVO, III, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 07-1-0686(1))

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Fujise and Ginoza, JJ.)

Defendant-Appellant Clarence L. Montalvo, III
(Montalvo) appeals from a December 14, 2011 Judgment of the
Circuit Court of the Second Circuit (Circuit Court) convicting
Montalvo of the lesser-included offense of Negligent Homicide in
the Third Degree (NH3), in violation of Hawaii Revised Statutes
(HRS) § 707-704 (2014).[1] On appeal, Montalvo maintains that the
Circuit Court erred when it (1) denied his "Motion to Dismiss
Indictment for Selective Prosecution and/or in the Alternative,
to Compel Discovery and for Bill of Particulars" (Selective
Prosecution Motion)[2]; (2) denied his Motion for Dismissal of
Indictment Based Upon Double Jeopardy Grounds (Motion to
Dismiss); (3) instructed the jury on the lesser-included offense
of NH3 over his objection that there was no rational basis in the
evidence to support the lesser-included offense; and (4) denied
his motion for judgment of acquittal due to lack of medical
evidence that Montalvo caused Decedent's death.

---

[1] The Honorable Rhonda I.L. Loo presided, unless otherwise noted.

[2] The Honorable Joel E. August presided.

After reviewing the record on appeal, the points raised, the parties' arguments and the applicable legal authority, we resolve Montalvo's points as follows and affirm.

1.    The Circuit Court did not err when it denied Montalvo's Selective Prosecution Motion.  The "burden of proving discriminatory enforcement of the law rests upon the party raising the defense[;] [t]hat party must present sufficient evidence to establish the existence of intentional or purposeful discrimination that is deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification."  State v. Kailua Auto Wreckers, Inc., 62 Haw. 222, 226-27, 615 P.2d 730, 734-35 (1980) (emphasis added, footnote, citations, and internal quotation marks omitted).  In addition, it "is insufficient to show merely that other offenders have not been prosecuted[.]"  Id., at 227, 615 P.2d at 735. Montalvo failed to carry his burden of proving that the decision to prosecute him for the instant offense was based on an impermissible motive.

2.    The Circuit Court did not err in denying Montalvo's Motion to Dismiss.  The prohibition against double jeopardy generally "attaches when the jury is empaneled and sworn[.]"  State v. Quitog, 85 Hawai'i 128, 141, 938 P.2d 559, 572 (1997) (citation and internal quotation marks omitted). However, "'retrial is not automatically barred [by the double jeopardy clause] when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused.' [Arizona v. Washington, 434 U.S. 497, 505 (1978).]"  Id. at 141-42, 938 P.2d at 572-73 (quoting State v. Lam, 75 Haw. 195, 200, 857 P.2d 585, 589 (1993), overruled on other grounds by State v. Wilmer, 97 Hawai'i 238, 35 P.3d 755 (2001)).  In the instant case, the Circuit Court declared a mistrial after the jury had been sworn in, but the case was terminated without reaching the merits of the charge.

Where a mistrial is declared because of "manifest necessity" a retrial is not barred.  Quitog, 85 Hawai'i at 143, 938 P.2d at 574.  "Manifest necessity is defined as circumstances in which it becomes no longer possible to conduct the trial or to

reach a fair result based on the evidence." State v. Wilmer, 97 Hawai'i 238, 244, 35 P.3d 722, 761 (2001) (citation, internal quotation marks, and ellipsis points omitted); see also, HRS § 701-110(4)(b)(iii). "A trial court's declaration of a mistrial is reviewed under the abuse of discretion standard. Quitog, 85 Hawai'i at 142, 938 P.2d at 573. A determination of manifest necessity is likewise left to the sound discretion of the trial court[,]" Wilmer, 97 Hawai'i at 243, 35 P.3d at 760 (citation omitted), and great deference will be given to such a determination. Quitog, 85 Hawai'i at 143, 938 P.2d at 574.

Montalvo argues that his first trial was improperly terminated because the mistrial was declared as a consequence of the prosecution failing to provide all discovery--certain photographs--to him prior to trial. The State counters that it had sent a letter containing the photographs to defense counsel prior to trial and cited defense counsel's failure to timely file a notice of change of address as an explanation for why defense counsel may not have received the discovery. The failure of discovery did not come to light until trial had begun. The Circuit Court examined counsel for both parties regarding the circumstances of the discovery failure and concluded that it was not possible to determine fault between them.

The Circuit Court also considered other alternatives, Quitog, 85 Hawai'i at 143, 938 P.2d at 574, and noted that the State would be prejudiced if it could not use the photographs--as the State's expert had prepared his report based on them--and the defense would be prejudiced by going forward with trial without giving time to the defense to prepare. Observing that continuing the trial to give the defense--including an expert witness--the opportunity to review the photographs and prepare for resumption of trial would cause a delay of several months, the Circuit Court concluded that it would be impracticable to have the jury return after several months, and ruled that manifest necessity justifying a mistrial was present.

Given the circumstances, the Circuit Court did not abuse its discretion in declaring a mistrial based on manifest

necessity and consequently did not err in denying Montalvo's Motion to Dismiss.[3]

3. The Circuit Court did not err in instructing the jury on the lesser included offense of NH3. Pursuant to HRS §§ 701-109(4)(a) and 701-109(5) (2014), a defendant may be convicted of an included offense.[4] "[J]ury instructions on lesser-included offenses must be given where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense." State v. Flores, 131 Hawai'i 43, 51, 314 P.3d 120, 128 (2013) (emphasis added). Montalvo argues that there was no rational basis in the evidence here to support the giving of an instruction on NH3. We disagree.

As instructed in this case, the only difference between the offenses of Negligent Homicide in the Second and Third Degrees is the required *mens rea* for each, "negligence" and "simple negligence" respectively. HRS §§ 707-703(1)(a) and -704(1). Negligence as defined requires awareness of a substantial and unjustifiable risk, whereas simple negligence "is essentially a civil standard of negligence." HRS § 702-206(4) and supplemental commentary.

Here, the prosecution presented expert and eyewitness testimony that Montalvo was speeding in his cement truck, following too close to Decedent's vehicle, and may have been inattentive when he collided with Decedent's vehicle from behind.

---

[3] Because of our decision regarding manifest necessity, we need not address the State's argument that Montalvo implicitly consented to the mistrial.

[4] HRS § 701-109(4)(a) provides, in relevant part:
(4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

    (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]

HRS § 701-109(5) provides:

    (5) The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.

Montalvo was quoted as having told police personnel that he was distracted by something on the side of the road just before he noticed Decedent's truck. Montalvo presented his own expert's testimony that supported the theory that Decedent entered the roadway from the shoulder and "cut off" Montalvo. Montalvo concurred, and testified that Decedent pulled out in front of him, giving him no opportunity to stop, and denied telling an officer that he had been distracted.

As the jury was free to assess the credibility of these witnesses and give weight to each as the jury saw fit, it was reasonable for the Circuit Court to conclude that the jury could disbelieve or give little weight to the witnesses who supported a set of facts showing Montalvo was aware of a substantial and unjustifiable risk presented by speeding and following another vehicle too closely in his cement truck, while crediting those whose testimony supported the conclusion he was aware of a mere risk, such as the possibility that a hazard might present itself when he took his eyes off the road. We find no error in instructing the jury on the lesser included offense here.

4. The Circuit Court did not err in denying Montalvo's motion for judgment of acquittal. Montalvo argues that, because the medical examiner could not testify that Decedent's injuries were caused by Montalvo's collision with Decedent's truck, there was insufficient evidence to support Montalvo's conviction.

> The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the jury, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs this same standard of review.

State v. Alston, 75 Haw. 517, 528, 865 P.2d 157, 164 (1994) (citation omitted).

The testimony presented at trial showed that Decedent's truck was first struck from behind by Montalvo's cement truck, and was propelled over the dividing line into oncoming traffic, colliding with a SUV. An eyewitness to the collisions testified that he "observed a (sic) glass flying in the air and a truck with the front fenders jumped and shuttered, and a small pickup

5

or pickup with a flatbed came shooting off quickly from the impact, and crossed the center line in front of me and off into the -- over the embankment to the ocean side, the west side." The witness further testified that Decedent's flatbed truck "lurched forward" approximately 100 to 150 yards after Montalvo struck it. When he approached the truck, he saw that the flat bed of the truck "had been pushed up and collapsed the back part of the cab. The door would not open. . . . So it obviously had been crushed forward." The witness could see that the driver had severe trauma to the top back of his head. Decedent expired shortly thereafter.

Although the medical examiner could not determine, as a pathologist, which of Decedent's injuries were caused by Montalvo's collision with his truck and which were caused by the subsequent collision with the SUV, there was no dispute that the former collision began the series of events that caused Decedent's death. Therefore, taking the evidence in the light most favorable to the prosecution, a reasonable jury could have found Montalvo caused the death of Decedent.

Therefore, the December 14, 2011 Judgment of the Circuit Court of the Second Circuit is affirmed.

DATED: Honolulu, Hawai'i, June 30, 2015.

On the briefs:

Shawn A. Luiz,
for Defendant-Appellant.

Chief Judge

Artemio C. Baxa,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Associate Judge

Associate Judge